UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRANDON STOLLINGS, | ) | |
| Plaintiff, | ) ) ) | 08 C 4006 |
| vs. | ) ) | Judge Feinerman |
| RYOBI TECHNOLOGIES, INC., ONE WORLD TECHNOLOGIES, INC., and HOME DEPOT U.S.A., INC., | ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Brandon Stollings was injured while operating a table saw and sued Ryobi Technologies, Inc., the saw's manufacturer; One World Technologies, Inc., the distributor; and Home Depot USA, Inc., the retailer. Defendants have moved for summary judgment, based primarily on Stollings's admissions that he removed the saw's blade guard despite knowing the risks of doing so. Because Stollings's admissions do not establish as a matter of law that his actions were more than 50% of the proximate cause of his injury—the threshold for barring recovery on strict liability and negligence claims under the Illinois strict liability regime—summary judgment is denied.

In early May 2007, Stollings purchased a Ryobi model BTS20R-1 table saw from a Home Depot in Round Lake, Illinois. The saw included a blade guard that covered the blade and prevented it from contacting the user. Attached to the guard were "anti-kickback pawls," which were designed to prevent the material being sawed from kicking back in the user's direction. The blade guard was removable, and removing the blade automatically removed the attached

anti-kickback pawls. The saw's manual warned users never to remove the blade guard or to cut freehand.

Days after the purchase, Stollings was using the saw to cut a piece of laminate material when the piece "kicked back" at him, causing his left hand to make contact with the saw blade. Two fingers were severed and three were injured. Stollings filed suit, and alleges that the saw was defectively and negligently designed in three respects.

First, Stollings asserts that the saw is defective because its anti-kickback device was permanently attached to the blade guard, meaning that removing the blade guard necessarily resulted in removing the anti-kickback device as well. Stollings notes that Ryobi was aware of designs that incorporated an independent anti-kickback device that would remain in place and continue to protect against kickbacks even if the blade guard was removed. Noting that a kickback led directly to the accident, Stollings charges that the lack of an independent anti-kickback device was a defect that caused his injury.

Second, Stollings charges that the blade guard on the type of saw he purchased quickly became clouded with sawdust and other debris when cutting certain materials, including laminates. Such clouding prevents the user from seeing the cut, which makes using the guard infeasible, leading users to remove the guard and thus the anti-kickback device. The factual predicate of Stollings's view has been corroborated by Ryobi engineers, who acknowledged on more than one occasion, including in a 2003 patent application, that clouding was a problem with the blade guards on some Ryobi saws and that many users removed the guards as a result. Stollings notes that saw manufacturers have dealt with this problem by incorporating new designs that allow users to view the cutting process without the line of sight being impeded by

sawdust or debris. Stollings argues that but for this alleged defect in his saw's blade guard, he would not have had to remove the guard and would not have been injured.

Third, Stollings asserts the saw was defective because it lacked flesh-detection technology. Flesh-detection technology uses the electrical capacitance of the human body to cause the saw blade to stop or to drop away from the cutting surface almost immediately upon its coming in contact with human flesh. Such technology, he argues, was available at the time the saw was designed and manufactured and would have prevented or substantially lessened his injury.

The parties agree that Illinois law governs this diversity case, so Illinois law will be applied. *See Malen v. MTD Prods., Inc.*, ___ F.3d ___, 2010 WL 4670176, at *6 (7th Cir. 2010). To prevail his strict products liability claim, Stollings must "prove that [his] injury resulted from a condition which is attributable to the defendants and made the [saw] unreasonably dangerous." *Ibid*. (citing cases). To prevail on his negligence claim, Stollings must "prove that the construction or design of the [saw] breached a duty of care and was the proximate cause of [his] injury." *Ibid*. (citing cases). "Proof of causation … is essential to both theories of liability." *Ibid*. (citing cases).

Stollings admitted at his deposition that he had not read the warnings in the saw's manual and that he understood the risks of removing the blade guard and cutting freehand. Those admissions, Defendants maintain, show as a matter of law that Stollings assumed the risk of injury. By assumption of risk, Defendants do *not* mean express assumption of risk, where the plaintiff explicitly agrees to assume a risk, or primary implied assumption of risk, where "the plaintiff assumes risks inherent in the nature of the activity," such as a contact sport. *Coleman v. Ramada Hotel Operating Co.*, 933 F.2d 470, 476-77 (7th Cir. 1991); *see also Morrissey v.*

*Arlington Park Racecourse, LLC*, 935 N.E.2d 644, 652 (Ill. App. 2010) (primary implied assumption of risk applies where "[t]he risks assumed are not those created by the defendant's negligence but rather those created by the nature of the activity itself"); *Tooley v. Washington Group Int'l, Inc.*, 2010 WL 275338, at *4 (C.D. Ill. Jan. 15, 2010) (express assumption of risk and primary implied assumption of risk can pose an absolute bar to liability) (citing cases). Rather, as Defendants make clear without using the precise term (Doc. 31 at 3-4), they mean secondary implied assumption of risk, where "the plaintiff assumes risks that are created by the defendant's [alleged] negligence." *Coleman*, 933 F.2d at 477; *see also Davis v. Consolidated Rail Corp.*, 788 F.2d 1260, 1266 (7th Cir. 1986); *Evans v. Lima Lima Flight Team, Inc.*, 869 N.E.2d 195, 206 (Ill. App. 2007) ("[S]econdary implied assumption of the risk occurs where the defendant's negligence created a danger that was apparent to the injured party, who nevertheless voluntarily chose to encounter it.").

Under Illinois law, secondary implied assumption of risk is not a categorical bar to recovery, but is subsumed by the comparative fault regime set forth in 735 ILCS 5/2-1116, which merely reduces a plaintiff's entitlement to damages in proportion to his contribution to the accident's proximate cause, so long as the contribution does not exceed 50%. *See Malen*, 2010 WL 4670176, at *15; *Davis*, 788 F.2d at 1266-67; *Coney v. J.L.G. Indus., Inc.*, 454 N.E.2d 197, 204 (Ill. 1983) ("[T]he defenses of misuse and assumption of the risk will no longer bar recovery. Instead, such misconduct will be compared in the apportionment of damages."); *Evans*, 869 N.E.2d at 206. However, "whether a claim is based on negligence or strict products liability, an injured party is barred from recovering … if the trier of fact finds that his conduct was more than 50% of the proximate cause of the injury for which recovery is sought." *Malen*,

2010 WL 4670176, at *15; *see also Miller v. Ill. Cent. R.R. Co.*, 474 F.3d 951, 957 (7th Cir. 2007); *Freislinger v. Emro Propane Co.*, 99 F.3d 1412, 1417 (7th Cir. 1996).

Thus, as Defendants acknowledge (Doc. 31 at 3-4), summary judgment is appropriate on assumption of risk grounds only if no reasonable factfinder could find that Stollings's conduct was 50% or less of the proximate cause of his injuries. *See Basham v. Hunt*, 773 N.E.2d 1213, 1227 (Ill. App. 2002); *Bier v. Leanna Lakeside Prop. Ass'n*, 711 N.E.2d 773, 786 (Ill. App. 1999). To support their position that this standard has been satisfied, Defendants point to Stollings's admissions that he operated the saw without the blade guard despite knowing the risks of doing so and that he failed to read the portion of the manual warning that the saw should never be used without the blade guard.

The matter of the warning is easily disposed of. Illinois holds that a manufacturer cannot avoid liability by warning of a product's dangers if it is reasonably foreseeable that consumers will ignore the warnings. *See Malen*, 2010 WL 4670176, at *13 ("[W]hen warnings are relevant, a jury ordinarily must decide whether the failure to follow them rendered the plaintiff's conduct unforeseeable.") (citing cases). Stollings adduced considerable evidence, including (as noted above) from engineers at Ryobi, that the occlusion of the blade guard caused by saw dust and other debris frequently leads users to ignore the warnings and remove the guard and thus the permanently attached anti-kickback device—meaning that the removal is at least arguably foreseeable. The warning in the manual therefore does not establish as a matter of law that Stollings was responsible for his injuries; at most, the warnings create a disputed issue of fact regarding his comparative negligence. *See ibid*.

Nor are Defendants entitled to judgment based on Stollings's removal of the blade guard and his subjective understanding that the guard (and the attached anti-kickback device) could

-5-

prevent injury. Those matters, while certainly relevant to the question of comparative negligence, would not compel a reasonable jury to conclude that Stollings's actions were more than 50% of the accident's proximate cause. Even setting aside the saw's lack of flesh-detection technology, a reasonable jury could find that Stollings would not have been injured had the saw included *either* a blade guard that did not cloud up *or* an independent anti-kickback device that was not permanently attached to the guard. From those findings, a reasonable jury could conclude that those two alleged defects—the blade guard's propensity to cloud up, rendering it effectively unusable, and its permanent attachment to the anti-kickback device—contributed at least 50% of the accident's proximate cause.

Illinois law provides that while unforeseeable alterations to a product preclude a manufacturer's liability, reasonably foreseeable alterations do not. In *Foster v. Devilbiss Co.*, 529 N.E.2d 581 (Ill. App. 1988), the plaintiff removed a nozzle guard from a paint gun that would have prevented the gun from injuring him. *Id*. at 583-84. The plaintiff adduced evidence that users had to remove the nozzle guards to clean the paint gun, which led the court to rule that the alteration was foreseeable and thus not preclusive of liability. *Id*. at 584; *see also Anderson v. Hyster Co.*, 385 N.E.2d 690, 693 (Ill. 1979) (product misuse "would serve to break the causal connection between the defective product and the plaintiffs' injuries only if such misuse was not reasonably foreseeable"). *Foster* illustrates the principle that "subsequent alterations are objectively foreseeable where in light of the general experience within the industry at the time the product was manufactured, they could reasonably have been anticipated by the manufacturer." *Kempes v. Dunlap Tire & Rubber Corp.*, 548 N.E.2d 644, 647 (Ill. App. 1988).

As noted above, Stollings adduced evidence that the blade guard would become clouded by debris, rendering it effectively unusable, and that the manufacturer of his saw and the table

-6-

saw industry as a whole knew of this phenomenon, knew that a large percentage of users removed the guard as a result, and knew of the problems inherent in permanently attaching the guard to the anti-kickback device. As a result, open questions remain regarding whether Stollings's removal of the guard was reasonably foreseeable and, therefore, whether the saw's alleged defects were more responsible than his conduct for the accident. *See Foster*, 529 N.E.2d at 584 ("[I]t is reasonably foreseeable that where parts are removed with relative ease, and hinder the use of the product, they may be removed and not replaced."); *Spurgeon v. Julius Blum, Inc.*, 816 F. Supp. 1317, 1324 (C.D. Ill. 1993) ("Generally, where a safety shield is easily removable and hinders use of the product, a jury is entitled to determine whether its removal was reasonably foreseeable.") (citing cases). Given this, deciding whether Stollings's conduct was more than 50% of the accident's proximate cause is a question for the jury, not for the court on summary judgment. *See Foster*, 529 N.E.2d at 584 ("The jury was entitled to determine whether removal of the trigger and nozzle guards was reasonably foreseeable."); *Spurgeon*, 816 F. Supp. at 1324.

Defendants briefly contend that because Stollings admitted that he would not have been injured had he not removed the blade guard (and thus the anti-kickback device), he cannot establish that the saw's alleged defects proximately caused his injuries. The contention rests on the demonstrably incorrect premise that there can be only one proximate cause of an injury. The Illinois comparative fault statute makes clear that there can be more than one proximate cause for an injury; it states that the plaintiff "shall be barred from recovering damages if the trier of fact finds that the contributory fault on the part of the plaintiff is more than 50% of the proximate cause of the injury," but not "if the trier of fact finds that the contributory fault on the part of the plaintiff is not more than 50% of the proximate cause of the injury." 735 ILCS 5/2-

1116(c) This comparative fault regime makes sense only if proximate cause can be allocated between the plaintiff and the defendant. Thus, even if the fact that Stollings's actions were a cause-in-fact of the accident leads inexorably to the conclusion that his actions were *a* proximate cause of the accident, Stollings still can recover if the jury finds that the saw was defective and that the defects were 50% or more of the accident's proximate cause. *See Pickel v. Springfield Stallions, Inc.*, 926 N.E.2d 877, 890 (Ill. App. 2010); *Kleen v. Homak Mfg. Co, Inc.*, 749 N.E.2d 26, 29 (Ill. App. 2001).

For the foregoing reasons, Defendants' motion for summary judgment is denied.

January 21, 2011

_____
United States District Judge