IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| BRANDON STOLLINGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 08 cv 4006 |
| | ) | |
| RYOBI TECHNOLOGIES, INC., ONE | ) | Judge Gary Feinerman |
| WORLD TECHNOLOGIES, INC. and | ) | Magistrate Judge Susan E. Cox |
| HOME DEPOT U.S.A., INC., | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS RYOBI TECHNOLOGIES, INC., AND ONE WORLD TECHNOLOGIES, INC.'S RULE 50 MOTION FOR JUDGMMENT AS A MATTER OF LAW

Defendants Ryobi Technologies, Inc., and One World Technologies, Inc., (One World) by and through their attorneys, Johnson & Bell, Ltd., pursuant to Rule 50 of the Federal Rules of Civil Procedure (Rule 50) respectfully move this Court to enter judgment in its favor as a matter of law on the remaining counts pending against One World -- Counts I and II for negligence and strict liability. In support of its motion, One World states as follows:

### APPLICABLE LAW AND STANDARD

Rule 50 of the Federal Rules of Civil Procedure provides for the entry of judgment as a matter of law where, after a party has been fully heard on an issue in a jury trial, the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue. Rule 50(a)(1). In diversity cases, state law supplies the standard to be applied to motions for directed verdict. *Jackson v. Bunge Corp.*, 40 F.3d 239, 242 (7th Cir. 1994). Illinois law provides that a directed verdict should be granted when "'all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand.'" *Pro Football Weekly Inc., v. Gannett Co., Inc.,*

988 F.2d 723, 726-27 (7th Cir. 1993) *citing Maple v. Gustafson*, 151 Ill.2d 445 (1992) (footnote omitted) (*quoting Pedrick v. Peoria & E. R.R. Co.*, 37 Ill.2d 494 (1967).

The rule is well established that when the evidence in a case is such that without weighing the credibility of witnesses there can be but one reasonable conclusion as to the verdict to be reached, a district judge should determine the proceeding by directing the verdict, without submission to the jury; such direction will have the result of saving the mischance of speculation over legally unfounded claims. *See Brady v. Southern Ry. Co.*, 320 U.S. 476, 479-80 (1943); 9 Wright & Miller, Federal Practice and Procedure § 2524 (1971).

## **NEGLIGENCE**

In order to recover damages based upon Ryobi's and One World's alleged negligence, the plaintiff must prove that Ryobi and One World owed a duty to the plaintiff, a breach of that duty, an injury that was proximately caused by that breach, and damages. *Jablonski v. Ford Motor Co.*, 955 N.E.2d 1138, 1153-54 (Ill. 2011). In Count I of the complaint, the plaintiff alleges that "Ryobi and One World were negligent with respect to the designing, manufacturing, testing, inspecting, distributing, and selling of the Rigid Saw and was negligent with respect to equipping the Rigid Saw with adequate safeguards, warnings and/or instructions." (Cmplt. at ¶21).

### Plaintiff Failed to Show Negligent Design

Plaintiff's negligence claim is one of negligent design. A product liability action asserting a claim based on negligence, such as negligent design, is based upon fundamental concepts of common law negligence. *Calles v. Scripto-Tokai Corp.*, 224 Ill.2d 247, 270, 864 N.E.2d 249 (2007). In a negligence defective design case, the focus is on the conduct of the defendant. *See Coney v. J.L.G. Industries, Inc.*, 97 Ill. 2d 104, 117-18, 454 N.E.2d 197 (1983); *Baltus v. Weaver Division of Kidde & Co.*, 199 Ill. App. 3d 821, 829, 557 N.E.2d 580 (1990); *Carrizales v. Rheem Manufacturing Co.*, 226 Ill. App. 3d 20, 36-37, 589 N.E.2d 569 (1991). A plaintiff raising a

2

negligence claim must do more than simply allege a better design for the product; he must plead and prove evidence of a standard of care by which to measure a defendant's design and establish a deviation from that standard. *Carrizales*, 226 Ill. App. 3d at 37; *Baltus*, 199 Ill. App. 3d at 831; *see also Ferentchak v. Village of Frankfort*, 105 Ill. 2d 474, 480, 475 N.E.2d 822 (1985). Thus, to establish a negligence claim for a defective design of a product, a plaintiff must prove that either (1) the defendant deviated from the standard of care that other manufacturers in the industry followed at the time the product was designed, or (2) that the defendant knew or should have known, in the exercise of ordinary care, that the product was unreasonably dangerous and defendant failed to warn of its dangerous propensity. *Carrizales*, 226 Ill. App. 3d at 36; *Baltus*, 199 Ill. App. 3d at 830.

In the context of a design-defect case, the Court applies the risk-utility analysis. There are a myriad of factors that may be relevant to the balance, and they may vary depending upon the unique facts and circumstances of each case. In applying the balancing test, the court must initially balance factors it finds relevant to determine if the case is a proper one to submit to the jury. *Calles*, 224 Ill. 2d at 266 (citing Restatement (Third) of Torts: Products Liability § 2, Reporters' Note, cmt. f, at 94 (1998)). Factors include evidence of (1) the availability and feasibility of alternate designs at the time of the product's manufacture; or (2) that the design used did not conform to the design standards in the industry, design guidelines provided by an authoritative voluntary organization, or design criteria set by legislation or governmental regulation. *Calles*, 224 Ill. 2d at 263-64 (quoting *Anderson v. Hyster Co.*, 74 Ill. 2d 364, 368, 385 N.E.2d 690 (1979)). Other factors that may be relevant include the utility of the product to the user and to the public as a whole, the safety aspects of the product including the likelihood that it will cause injury and the probable seriousness of the injury, and the manufacturer's ability to

3

eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility. *Id.*; *see also Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516, 555, 901 N.E.2d 329 (2008) (finding the risk-utility formulation in the Restatement (Third) of Torts: Products Liability § 2, cmt. f, at 23 (1998), to be instructive in a design defect case).

Evidence of industry standards is a factor to be considered in the balance and has always been relevant to determining whether a defendant has exercised reasonable care in designing a product. *Jablonski*, 955 N.E.2d at 1156. The standard remains whether the conduct was reasonable under the circumstances. *Calles*, 224 Ill. 2d at 270; *Modelski v. Navistar International Transportation Corp.*, 302 Ill. App. 3d 879, 887, 707 N.E.2d 239 (1999).

A manufacturer is not required to guard against every conceivable risk, regardless of the degree of harm. *Cunis v. Brennan*, 56 Ill. 2d 372, 376, 308 N.E.2d 617 (1974). Rather, plaintiff was required to produce evidence that Ryobi and One World's conduct in designing the table saw was unreasonable by presenting evidence that the risk was foreseeable and that the risks inherent in the product design outweighed the benefits. *Calles*, 224 Ill. 2d at 270-71.

Here, the evidence is undisputed that the design of the table saw conformed with the design standards in the industry. Furthermore, the table saw conformed with UL design guidelines. And, finally, the table saw conformed with applicable governmental regulations and standards. Thus, Plaintiff has not shown that Ryobi and One World deviated from the standard of care that other manufacturers in the industry followed at the time the product was designed.

Furthermore, the table saw was not unreasonably dangerous under the risk utility analysis. Alternative designs, including the flesh detection technology, were not feasible at the time of the table saw's manufacture. Installation of that technology would have made this table saw too expensive to maintain its utility.

Finally, even according to Plaintiff Stollings, if the guard that was manufactured with and accompanied the table saw had been used according to the operator's manual, there no likelihood that the saw would have caused Plaintiff's injury. Thus, Plaintiff has failed to provide a prima facie case of negligence claim for a defective design of a product such that this claim should not go to the jury.

<u>Plaintiff Was the Sole Proximate Cause of His Injury</u>

The term "proximate cause" encompasses two distinct requirements: cause in fact and legal cause. *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 455, 605 N.E.2d 493 (1992). The first requirement, cause in fact, is present "when there is a reasonable certainty that a defendant's acts caused the injury or damage." *Id.* In deciding this question, we first ask whether the injury would have occurred absent the defendant's conduct. *Id.* In addition, when, as here, there are multiple factors that may have combined to cause the injury, we ask whether defendant's conduct was a material element and a substantial factor in bringing about the injury. *Id.*

Although proximate cause is generally a question of fact, the lack of proximate cause may be determined by the court as a matter of law where the facts alleged do not sufficiently demonstrate both cause in fact and legal cause. *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 395-396, 821 N.E.2d 1099 (2004) (citations omitted).

Plaintiff admitted at trial that one of the purposes of the subject table saw's 3-in-1 guard was to prevent injury from a kickback situation. Trial transcript vol. 3b at 582-585. Plaintiff recognized that the spinning blade presented a danger to his hand when the guard was not in place. *Id.* at 585-586. Furthermore, Plaintiff understood that not using the blade guard increased his risk of encountering the blade. *Id.* at 586. Furthermore, the record reflects the following testimony:

Q: Mr. Stollings, at the moment before your accident, you understood that by not using the blade guard, you were knowingly and voluntarily exposing yourself to an increased risk of injury of a hand contact with the spinning saw blade.

A: That is correct.

Q: And you understood that if the blade guard had been on this saw, that you would not have been injured.

A: I wouldn't necessarily say I wouldn't have been injured, but I have no way of – maybe it would have prevented a kickback, but I can't say I wouldn't have been injured.

Q: Do you recall your deposition?

A: Yes.

Q: And at Page 66 – again, you were under oath.

A: Uh-huh.

Q: And you were represented by counsel at the deposition, and I'm going to ask if this question was asked and if you gave the following answer:

> Question: Is it your belief that if the guard had been on the blade at the time of your accident, your accident wouldn't have happened?
>
> Answer: Yeah.

A: Yeah.

\* \* \*

Q: That was your answer at the deposition.

A: Yes.

Q: Do you want to change that answer now?

A: No.

6

*Id.* at 607-609.

    Plaintiff Stollings also testified as follows:

    Q: When you bought the saw at Home Depot, it came with a miter guide, right.

    A: Yes.

    Q: And it came with a blade guard.

    A: Yes.

    Q: But you left those in the box when you assembled the saw; isn't that correct?

    A: Yes.

*Id.* at 609.

    And, finally,

    Q: You didn't use the methods that were provided with the saw that would prevent a kickback, which was the guard, anti-kickback devices and the spreader.

    A: No, I didn't.

    Q: And you told the ladies and gentlemen of the jury that it was too difficult to – took too much time to put the guard on the table saw, is that what your – is that one of the reasons you didn't want to use it?

    A: Yeah, it's time consuming?

    Q: Time consuming?

    A: Adds up. Two minutes here, two minutes –

    Q: Adds up. Two minutes here, two minutes there.

    A: Not very convenient.

*Id.* at 614-615.

7

Mr. Stollings clearly knew of the danger of using a table saw without a guard and that he used the table saw at issue knowing full well that he was increasing his risk of injury. Mr. Stollings clearly understood the potential to sustain injury from his actions and nevertheless, utilized the table saw without reading the manual and without utilizing an essential safety device that he knew was provided to prevent precisely the injury that he sustained. If Mr. Stollings had taken two minutes to install the guard, the accident would not have happened.

Mr. Stollings failure to read the operator's safety instructions which contain numerous warnings and instructions on use of the guard constitutes further evidence of Mr. Stollings' conduct was the sole proximate cause of his injury. Illinois Courts have confirmed that where a product manufacturer gives instructions and warnings on the proper use of its product, the law dictates that the manufacturer may expect that a user will read and heed those instructions and warnings. *Taylor v. Gerry's Ridgewood, Inc.*, 141 Ill. App. 3d 780 (Ill. App. 1986); *see also Curry v. Louis Allis Co.*, 100 Ill. App. 3d 910 (Ill. App. 1981). As such, Mr. Stollings ignored the product manufacturer's specific instructions on how to prevent the very injury that Mr. Stollings sustained. Had he read the manual and followed the instructions or heeded the warnings on the product, as plaintiff agrees, this accident would not have happened. As such, Mr. Stollings accepted the risk of his injuries and is completely responsible for his accident.

<u>Warnings Were Adequate, They Were Just Ignored</u>

Finally, there has been no evidence or testimony by or on behalf of plaintiff offered which would support an argument that the presence of adequate warnings or instructions would have prevented his injuries. Indeed, the evidence suggests otherwise as Plaintiff testified that he did not read the warnings or instructions either in the manual or on the table saw itself. Trial transcript vol. 3b at 579-580. Plaintiff provided the following testimony:

Q: Now, there were warnings on the saw itself; is that right?

A: Correct.

Q: But you didn't look at them.

A: No, because under my experience using table saws when I bought this one, I'm used to – used to table saws, so I didn't think I had to look at the warnings.

*Id.* at 611.

In fact, there was no evidence presented that the warnings or instructions in the manual or the table saw itself were inadequate. As such, plaintiff's negligent claim with respect to Ryobi's and One World's alleged failure to equip the subject saw with adequate warnings or instructions must fail.

The case of *Broussard v. Houdaille Industries, Inc.,* 183 Ill.App.3d 739 (Ill. App. 1989) is instructive. An operator of a press brake machine brought a product liability action against the manufacturer of a gate guard system for injuries plaintiff sustained while operating the press brake machine without the gate guard. Plaintiff claimed that the manufacturer's failure to provide an instruction manual to his employer on how to operate the gate guard rendered the gate guard system defective, thereby causing his injuries. Plaintiff and his co-employee/supervisor decided not to use the gate guard for that particular job. The trial court entered judgment in favor of the plaintiff. The Appellate Court for the First District reversed the trial court and remanded the case with instructions to enter judgment in favor of the manufacturer. The *Broussard* court stated:

> The fact is that at the time of the injury in question [the employer] through its set-up man, had made a conscious and deliberate decision that the gate guard would not be used in the particular operation which was being conducted by [plaintiff]. Based on the direct testimony of [the set-up man], we are asked to assume that, had a manual indeed been in [the employer's] possession prior to the accident, a different result would have obtained. To make such an assumption, as well as the assumption that the absence of the manual was the proximate cause of this accident, is an exercise in gross speculation and conjecture which cannot be permitted. There is simply no evidence to support such a conclusion.
>
> * * *
>
> In the warning cases, it has been held that there must be sufficient evidence supporting a reasonable inference, rather than a guess, that the presence of adequate warnings would have prevented the plaintiff's injuries.

*Id.* at 744-745.

The Northern District has also recognized that under Illinois law a plaintiff cannot maintain a failure to warn theory of liability where a plaintiff has failed to read the warnings. *See McConnell v. Arrow Uniform Rental, Inc.*, 1999 U.S. Dist. LEXIS 1769 at 25-26 (N.D. Ill. 1999) (holding that where "plaintiff failed to read the warning labels, the alleged inadequate content of those warnings could not have proximately caused his injuries. . . .") Thus, under Illinois law, plaintiff cannot, as a matter of law, maintain a claim for inadequate warnings or instructions on the subject table saw because plaintiff admitted at trial that he never read the warnings and instructions contained in the operators manual that accompanied the table saw at the time of purchase or the table saw itself. Therefore, as a matter of law, the plaintiff can never prove that any alleged inadequately drafted warnings or instructions proximately caused the plaintiff's injuries.

Therefore, under Federal Rule of Civil Procedure 50, Ryobi and One World are entitled to judgment as a matter of law with respect to the negligence count of Plaintiff's complaint.

## STRICT LIABILITY

Strict products liability is not a doctrine of absolute liability; the manufacturer of a product is not an absolute insurer. *Coney*, 97 Ill. 2d at 111. "Under both strict liability and negligence, a proximate cause is one that produces an injury through a natural and continuous sequence of events unbroken by any effective intervening cause. While proximate cause is ordinarily a question for the trier of fact, it becomes a question of law where there is no material issue of fact regarding the matter or only one conclusion is clearly evident." *Kleen v. Homak Mfg. Co., Inc.*, 321 Ill. App. 3d 639, 641 (Ill.App. 2001). Thus, the conduct of Mr. Stollings is relevant to the issue of proximate cause in this lawsuit based on strict liability in tort. *See Korando v. Uni-Royal Goodrich Tire Co.*, 159 Ill.2d 335 (1994). It was Plaintiff's burden of establishing the essential elements of their claim, including proximate cause. *Wintz by & Through Wintz v. Northrop Corp.*, 110 F.3d 508, 512 (7th Cir. 1997).

In *Korando*, the plaintiff's decedents were killed in a one car motor vehicle accident after the tread and top belt of the right rear steel belted radial tire separated from the bottom belt. The decedents' automobile skidded and went off the roadway, where it collided with a tree, vaulted into the air, and landed upside down in a creek. Plaintiff's decedents died as a result of the injuries sustained in the accident. The tire involved in the accident had been subjected to three punctures which were repaired with patches and a plug. The beads of the tire had been damaged such that an inner tube was placed in the tire to ensure that the tire retained air.

The sole theory of recovery was strict liability in tort. The tire manufacturer, through expert testimony, presented evidence of the driver's speed, braking and steering as the proximate cause of the accident. The *Korando* court held that evidence of plaintiff's conduct is directly relevant to the issue of proximate cause:

11

> "We find that the conduct of a plaintiff or a third party is relevant to the issue of proximate cause in a strict products liability case. Although a plaintiff's negligence is generally not an issue in a strict products liability case, evidence relating to the plaintiff's conduct is admissible to establish a defendant's theory of defense that the product was not the proximate cause of the plaintiff's injuries."

*Id.* at 1025.

In the instant case, not only did Mr. Stollings accept the risk of his actions, but his actions were the sole proximate cause of his accident. Mr. Stollings' own conduct in failing to read the operator's manual, failing to follow the manufacturer's safety instructions, failing to utilize the guard for the blade, and placing his hands in proximity to the spinning blade that he knew could injure his hands, was the proximate cause of this accident.

In order for this accident to occur, Mr. Stollings had to ignore all instructions and warnings given to him regarding the need to utilize the blade guard. Once Mr. Stollings set up the saw on May 9, 2007, he should have complied with the manufacturer's safety instructions and used the guard. His failure to do so was the sole proximate cause of his accident. Mr. Stollings concedes that this accident would not have happened had he used the guard.

For the reasons stated above, Defendants, Ryobi Technologies, Inc., and One World Technologies, Inc., pray that this Honorable Court enter judgment in their favor on Plaintiff's remaining negligence and strict liability claims.

Respectfully submitted,

**JOHNSON & BELL, LTD.**

/s/ John W. Bell
Attorneys for defendants Ryobi Technologies, Inc.,
One World Technologies, Inc. and Home Depot U.S.A.,Inc.

| | |
|---|---|
| John W. Bell | ARDC No. 0161934 |
| Robert R. McNamara | ARDC No. 6194965 |
| Meghan M. Sciortino | ARDC No. 6287341 |
| Alexandria L. Bell | ARDC No. 6294858 |

JOHNSON & BELL, LTD.
33 West Monroe Street
Suite 2700
Chicago, Illinois 60603
(312) 372-0770
Fax: (312) 372-9818
E-mail: <u>bellj@jbltd.com</u>
<u>mcnamarar@jbltd.com</u>
<u>sciortinom@jbltd.com</u>
<u>bella@jbltd.com</u>

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2012, I electronically filed **Defendants' Rule 50 Motion For Judgment As A Matter Of Law** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

/s/ John W. Bell
One of the Attorneys for Ryobi Technologies, Inc.,
One World Technologies, Inc. and Home Depot U.S.A.,Inc.