UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRANDON STOLLINGS, | ) | |
| | ) | |
| Plaintiff, | ) | 08 C 4006 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| RYOBI TECHNOLOGIES, INC., and ONE WORLD TECHNOLOGIES, INC., | ) ) | |
| | ) | |
| Defendants. | ) | |

**M**EMORANDUM **O**PINION AND **O**RDER

Brandon Stollings brought this product liability suit against Ryobi Technologies and One World Technologies (together, "Ryobi") after being injured while using a Ryobi-brand table saw. A jury returned a defense verdict, but the Seventh Circuit vacated the judgment and remanded the case for retrial. 725 F.3d 753 (7th Cir. 2013). Stollings prevailed at the second trial, and the court entered judgment for Stollings in the amount of $1,250,000.00 consistent with the jury's verdict. Docs. 552-553. Pursuant to Federal Rule of Civil Procedure 54(d)(1), Stollings filed a bill of costs seeking $143,371.51 under 28 U.S.C. § 1920. Doc. 574. Ryobi filed an opposition, and Stollings filed a reply. Docs. 583, 586. For the following reasons, the court awards Stollings $47,724.42 in taxable costs under § 1920.

**Discussion**

Rule 54(d)(1) provides, in relevant part: "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). A court awarding costs must ask first "whether the cost imposed on the losing party is recoverable" under § 1920 and, "if so, whether the amount assessed for that item was reasonable." *Majeske v. City of Chicago*, 218 F.3d 816, 824 (7th Cir.

1

2000). Recoverable costs include (1) "[f]ees of the clerk and marshal"; (2) fees for transcripts "necessarily obtained for use in the case"; (3) "[f]ees and disbursements for printing and witnesses"; (4) "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case"; (5) docket fees; and (6) "[c]ompensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services." 28 U.S.C. § 1920. "Although a district court has discretion when awarding costs, the discretion is narrowly confined because of the strong presumption created by Rule 54(d)(1) that the prevailing party will recover costs." *Contreras v. City of Chicago*, 119 F.3d 1286, 1295 (7th Cir. 1997) (internal quotation marks and citation omitted).

Ryobi objects to numerous items from Stollings's bill. Doc. 583 at 25 (summarizing the objections). Stollings's reply does not address, let alone dispute, the following objections:

   (1)   $3,917.16 for printing costs from the first trial;

   (2)   $52,976.75 for exemplification and copying costs from the first trial;

   (3)   $7,040.56 for expert witness travel costs from the first trial; and

   (4)   $3,335 for storage costs from the first trial.

Stollings also concedes that portions of several items in his bill are not recoverable and—what amounts to the same thing—agrees to scale back his requests for certain other items. Doc. 586 at 4, 10. By admitting, either affirmatively or by failing to argue the point, that these costs are not recoverable, Stollings has forfeited any claim he might otherwise have had to their recovery. *See Trs. of the Chi. Plastering Inst. Pension Trust v. Cork Plastering Co.*, 570 F.3d 890, 906 (7th Cir. 2009) ("Any party seeking an award of costs carries the burden of showing that the requested costs were necessarily incurred and reasonable.").

The court now turns to those matters on which the parties have joined issue.

**I.      Whether Stollings May Recover Any Costs from the First Trial**

Ryobi contends that Stollings cannot recover *any* costs incurred in connection with the first trial. Doc. 583 at 10-11. Ryobi advances two grounds for this contention: (1) Stollings was a prevailing party only with respect to the second trial; and (2) Stollings is bound by the law of the case because he unsuccessfully sought in an earlier sanctions motion his costs from the first trial. Both arguments fail to persuade.

A party who prevails at a second trial after successfully appealing an unfavorable verdict at the first trial generally is considered a prevailing party with respect to the first trial as well as the second trial, and thus "usually is awarded the costs of both trials." 10 Wright & Miller, *Federal Practice and Procedure* § 2667, at 206-07 (3d ed. 1998); *see Delano v. Kitch*, 663 F.2d 990, 1001 (10th Cir. 1981); *Superturf, Inc. v. Monsanto Co.*, 660 F.2d 1275, 1288 (8th Cir. 1981); *Givens v. Lederle*, 556 F.2d 1341, 1346 (5th Cir. 1977); *Vigortone Ag Prods., Inc. v. PM Ag Prods., Inc.*, 2004 WL 1899882, at *9 (N.D. Ill. Aug. 12, 2004). As the Seventh Circuit has explained, "when two trials are required to achieve the ultimate result, a plaintiff should be compensated for both trials, as long as the time spent at both was reasonably expended." *Shott v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 338 F.3d 736, 739 (7th Cir. 2003) (internal quotation marks omitted). *Shott* concerned attorney fees, not costs, but the distinction is immaterial for present purposes.

Ryobi also is wrong to invoke the law of the case doctrine, which "precludes reexamining a previous ruling … in the same case unless it was manifestly erroneous." *Starcon Int'l, Inc. v. Int'l Bhd. of Boilermakers*, 450 F.3d 276, 278 (7th Cir. 2006). Ryobi's argument arises from a 28 U.S.C. § 1927 sanctions motion that Stollings filed against Ryobi's counsel before the second trial. Doc. 403. The motion followed in the wake of the Seventh Circuit's ruling that, during the

3

first trial, Ryobi's counsel had improperly introduced a particular newspaper article into evidence and had improperly told the jury that Stollings's counsel and Dr. Stephen Gass, one of Stollings's expert witnesses, had collaborated to sue Ryobi as part of a "joint venture" to force table saw manufacturers to license Gass's safety technology. 725 F.3d at 760-63. Stollings sought to sanction Ryobi's counsel under § 1927 for this improper conduct and requested, among other things, the costs he incurred in connection with the first trial. Doc. 403 at 11. The court denied the sanctions motion in an oral ruling. Doc. 416.

The denial of Stollings's sanctions motion has nothing to do with his bill of costs because the standard governing a § 1927 motion is completely different from the standard governing costs under Rule 54(d)(1). The costs inquiry asks whether the movant is a prevailing party and whether his requested costs are reasonable, while a § 1927 motion asks whether "counsel acted recklessly, … raised baseless claims despite notice of the frivolous nature of these claims, or … otherwise showed indifference to statutes, rules, or court orders." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 799 (7th Cir. 2013) (internal quotation marks omitted). The law of the case doctrine does not apply here because the court in denying Stollings's § 1927 motion did not speak at all to his entitlement to costs as a prevailing party under Rule 54(d)(1). *See Kovacs v. United States*, 739 F.3d 1020, 1024 (7th Cir. 2014) ("The law-of-the-case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.") (internal quotation marks omitted).

That said, it is ironic that Ryobi relies on the court's denial of § 1927 sanctions after the first trial given what transpired during the second trial. The court denied the sanctions motion in part because Stollings himself had included the offending newspaper article in one of his proposed exhibits and, more significantly, because Ryobi's counsel's statements, while

4

improper, did not rise to the level of impropriety required for § 1927 sanctions. Ryobi did not seem to take that determination to heart, however, for during the second trial it persisted in the same conduct that the Seventh Circuit had clearly and unequivocally held improper.

The first two pages of Ryobi's opposition to Stollings's sanctions motion essentially argued that the Seventh Circuit had erred in reversing. Doc. 412 at 1-2. The undersigned judge informed Ryobi that this particular argument was wrong and inappropriate. Doc. 413 (a final transcript was not prepared for this status hearing). Next, at a motion *in limine* hearing before the second trial, Ryobi argued that the court should admit the very newspaper article that the Seventh Circuit held had been improperly admitted at the first trial. 8/25/2014 Tr. (Doc. 91) at 77-88. Again the court reminded Ryobi of the Seventh Circuit's clear holding and directions for the retrial. *Id*. at 89 ("The Seventh Circuit said on page 13 of the slip opinion, after talking about all the many ways in which the article was not good evidence, … 'The judge should have excluded the article.' I don't think there's really any ambiguity there, so I'm going to exclude the article."). That did not do the trick, for at a later hearing Ryobi argued yet again that the newspaper article was important to its case. 9/8/2014 Tr. (Doc. 597) at 3-6.

Because Ryobi apparently had not received the message, and because the Seventh Circuit had entrusted the undersigned with ensuring that the errors resulting in reversal after the first trial did not reoccur in the second, 725 F.3d at 772 ("We are confident … that Judge Feinerman will handle this issue deftly if it arises again, so Circuit Rule 36 shall not apply on remand."), the court issued this warning:

> THE COURT: … The defendants can't argue that the plaintiff's lawyers want Dr. Gass to have a monopoly. [They] can't talk about the plaintiff's lawyers at all.
>
> And if—let me say this: Given what happened in the first trial and how we were all surprised about what happened in the opening statement, if there's a

direct violation, a direct and clear violation of the Seventh Circuit's ruling or if there's a direct and clear violation of my *in limine* rulings as they pertain to what the Seventh Circuit said went wrong in the first trial, I will default the defendants on the spot, and we will go directly to a damages trial.

>MR. BELL: Your Honor—
>
>THE COURT: That's what—and you're going to say, "I'm not going to cross the line," but I'm telling you—
>
>MR. BELL: We're talking about Dr. Gass now. We're not talking about the plaintiff's attorneys or Mr. Stollings. We're talking about Dr. Gass.
>
>THE COURT: You're talking about *The Oregonian* article. If that happens, I will default your clients on the spot, and we will go directly to a damages trial. Okay? That's what we're going to do.
>
>MR. BELL: Your Honor, there's a prior inconsistent statement by Dr. Gass that he made in this courtroom. He admitted that he made part—some of those statements to *The Oregonian* newspaper. He admitted it in this courtroom. So, what are we—
>
>THE COURT: Represent your client as you will, Mr. Bell. Maybe some of them are in the courtroom right now. But I'm telling you, if you cross the line that the Seventh Circuit—if you clearly cross the line that the Seventh Circuit drew, if you clearly cross the line that I drew, I'm going to default your clients, and we're going to go straight to a damages trial. I'll have no problem doing that.

9/8/2014 Tr. (Doc. 597) at 15-17.

Ryobi complied for much of the trial, but relapsed badly during closing argument. At one juncture, pointing his finger at Stollings's counsel at the time indicated below—the finger-pointing of course does not appear on the transcript, but the undersigned saw it with his own eyes—Ryobi's counsel argued:

>Because Dr. Gass has his own agenda. He wants everybody to pay for a SawStop saw. Forget about going to Home Depot and buying a $200, $250 saw. You're going to pay $2,000 or you can use a hand held circular saw just like Mr. Holt did until he could afford to buy a table saw. That's what's going on here. And they [pointing to Stollings's counsel] got more cases to make the same arguments against every manufacturer because the manufacturers won't accept their responsibility to make a safe product. *That's the—that's the game that's being played here*.

6

9/18/14 Tr. (Doc. 572) at 1833 (emphasis added). Moments later, again pointing to his finger at Stollings's counsel—and referencing the fact that Dr. Gass did not testify at the retrial—Ryobi's counsel argued:

> That's part of [Gass's] game. He wants the government to maintain his monopoly, and he has no competition. That's what he wants you to do. That's what he [pointing to Stollings's counsel] wants you to do but he doesn't want Gass to come in here and be cross examined so you can see the truth, and you can hear the truth.

*Id.* at 1837.

After being treated to this blatant disregard of the Seventh Circuit's ruling and the court's pretrial warning, the court asked Stollings if he wished to move for a default as to liability. 9/19/2014 Tr. (Doc. 571) at 1864-1867. Stollings declined and, as noted above, the jury ultimately found for him. Given all this, it lies poorly in Ryobi's mouth to rely on the denial of § 1927 sanctions after the first trial to justify denying Stollings's request for Rule 54(d)(1) costs arising from that trial.

## II. Whether Ryobi Submitted Sufficient Rationales for His Costs

Ryobi argues that Stollings's bill should be summarily denied because he "has supplied [the] Court with a Bill of Costs and copies of receipts and invoices, but no rationale for why any expenses were incurred." Doc. 583 at 4. That is incorrect. Stollings has provided a rationale for most of the expenses he seeks to recover. That is not to say that all of those expenses should be taxed against Ryobi; rather, the court must consider whether, for those costs that are actually in dispute, Stollings's rationale supports an award under § 1920. The court now turns to that task.

### III. Specific Objections to Stollings's Bill of Costs

#### A. Fees of the Clerk

Stollings requests $646.00 for fees of the Clerk incurred during the first trial. Doc. 574 at 1. Such fees are recoverable and, for obvious reasons, reasonable. *See* 28 U.S.C. § 1920(1). Ryobi's only basis for disallowing this request is that Stollings should not recover any costs from the first trial. Doc. 583 at 10-11. The court has already rejected that argument.

#### B. Printing Services

Stollings requests $5,607.00 in costs for printing for the second trial. Doc. 574-1 at 1. Ryobi objects to all but $492.60 of this amount on the ground that Stollings's invoices, from a vendor called Equivalent Data, do not include enough to detail to show that the services were reasonably necessary for use in the case. Doc. 583 at 4-5; Doc. 586 at 3 n.1 (noting an arithmetic error in Ryobi's response). The court agrees that the invoices, standing alone, do not provide sufficient detail to support an award of costs. However, in response to Ryobi's argument, Stollings submitted an attorney declaration explaining the charges. Doc. 586-2 at ¶ 3. The declaration avers that Equivalent Data created three copies of will-offer and may-offer exhibits; one set was delivered to the court before trial, another set was used by testifying witnesses, and a third set was used to admit exhibits into evidence at the close of the trial. Equivalent Data also created another set of will-offer exhibits, but Stollings agrees to forgo the costs associated with that set, which he says amount to $276.26. *Ibid*.

The information provided by Stollings shows that the copying costs were necessary and reasonable. *See Glenayre Electronics, Inc. v. Jackson*, 2003 WL 21947112, at *3 (N.D. Ill. Aug. 11, 2003) ("The party seeking recovery of photocopying costs must come forward with evidence showing the nature of the documents copied, including how they were used or intended to be

8

used in the case."). The one wrinkle is that it is unclear how Stollings calculated the $276.26 figure for the will-offer set of exhibits; the invoices do not differentiate between that set and the other three sets. Accordingly, the court will disallow 25% of the Equivalent Data costs, and awards $3,835.80 (($5607.00 – $492.60) x .75). *See Day v. Inland SBA Mgmt. Corp.*, 2014 WL 3937436, at *2 (N.D. Ill. Aug. 12, 2014) (reducing printing costs by 50 percent because the invoices did not "provide the Court with the information necessary to determine whether the costs were necessary or were made for the sake of convenience"); *Trading Techs. Int'l v. eSpeed, Inc.*, 750 F. Supp. 2d 962, 979 (N.D. Ill. 2010) (similar). Added to the $492.60 in printing costs that Ryobi does not challenge, the total award for printing costs is $4,328.40.

### C. Video Editing Services

Stollings requests $10,216.17 in fees for exemplification and the costs of making copies, including $9,501.83 paid to Point Multimedia to create video depositions for the 2014 trial. Doc. 574-1 at 1. Citing *Auto Wax Co. v. Mark V Products, Inc.*, 2002 WL 265091, at *11 (N.D. Tex. Feb. 22, 2002), Ryobi suggests that costs of videotaped depositions are not taxable, Doc. 583 at 9, but that is not the law in the Seventh Circuit. *See Little v. Mitsubishi Motors N. Am., Inc.*, 514 F3d 699, 701 (7th Cir. 2008) ("Mr. Little's contention, that § 1920 does not permit district courts to award costs for video-taped recorded depositions at all, is foreclosed by our prior decisions holding that such costs may be taxed.").

Ryobi also contends that those costs are not reasonable because counsel could have read the transcripts into the record instead. Doc. 583 at 9. That argument fails as well. Playing a video deposition is superior to reading a deposition because the jury gets to see and hear the witness testify, which both enhances the jury's attention and permits it to make credibility determinations. *See Burden v. CSX Transp., Inc.*, 2011 WL 3793664, at *21 (S.D. Ill. Aug. 24,

9

2011) ("while juries do not favor depositions over live testimony, they do prefer video depositions over written transcripts only"). As the Seventh Circuit has noted, "[v]ideotaped depositions are a necessary and time effective method of preserving witnesses' time and allocating precious court and judicial time." *Commercial Credit Equip. Corp. v. Stamps*, 920 F.3d 1361, 1368 (7th Cir. 1990). It follows that the costs incurred in preparing the video depositions are allowed.

Ryobi also argues that the video deposition costs are not reasonable because some of the depositions—in particular, David Peot's—were not played at trial. Doc. 583 at 9. That argument, too, is wrong. "The introduction of a deposition … at trial is not a prerequisite for finding that it was necessary to take that deposition. The proper inquiry is whether the deposition was 'reasonably necessary' to the case at the time it was taken, not whether it was used in a motion or in court." *Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 454 (7th Cir. 1998) (citation omitted). As Stollings explains, when Peot was deposed, he was outside of the court's subpoena power and thus could not be compelled to appear at trial. Doc. 586 at 6. Stollings did not use that video deposition at trial only because Ryobi itself decided to call Peot and agreed to make him available during Stollings's case-in-chief. *Ibid*. Thus, although Peot's video deposition was not used a trial, the costs were reasonable at the time they were incurred.

Ryobi next objects to a $1,563.84 charge—itemized as an "other cost," although it may be more proper to consider it exemplification, Doc. 574-3 at 2—for creating a video demonstration of the proper use of a table saw. Doc. 583 at 24. Both sides agree that "[s]o long as the means of presentation"—here, the demonstrative video—"furthers the illustrative purpose of an exhibit, … it is potentially compensable as exemplification" under § 1920(4). *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 428 (7th Cir. 2000). This case raised issues concerning the

proper use of a table saw, and the video in question was valuable in presenting those issues to the jury. Indeed, Ryobi presented a similar video demonstration and the first trial and sought the associated costs after it prevailed. Doc. 355-1 at 2; Doc. 356 at 9. For these reasons, Stollings's video demonstration was "necessarily obtained for use in the case," 28 U.S.C. § 1920(4), and the court therefore allows the $1,563.84 in costs.

**D.     Expert Witness Costs**

Stollings initially sought $6,917.82 for witness costs, Doc. 574-1 at 1, but reduced his request after receiving Ryobi's response, Doc. 586 at 4. Section 1920(3) authorizes the prevailing party to recover the costs for witnesses set forth in 28 U.S.C. § 1821. *See Majeske*, 218 F.3d at 825-26. Those costs include a $40.00 daily attendance fee, § 1821(b); a $71.00 daily subsistence fee for overnight stays, § 1821(d); and travel expenses on "a common carrier at the most economical rate reasonably available," so long as the witness furnishes "[a] receipt or other evidence of actual cost," § 1821(c)(1). Stollings's original submissions did not include evidence of actual cost for two of his expert witnesses, Daryl Holt and Kelly Mehler. Doc. 574-2 at 38 (Holt invoice listing $3,100.57 in "Direct Costs: Travel"), 39 (Mehler invoice listing $993 in "Stollings travel expenses"). However, Stollings's reply submits additional documentation indicating that Holt and Mehler paid $664.20 and $744.20, respectively, for economy class tickets to Chicago. Doc. 586-12 at 1-4; 586-14 at 1. Those costs will be allowed, along with two days of attendance and subsistence fees for Holt ($222.00) and three days for Mehler ($333.00).

Airfare for a third witness, John Graham, totaled $456.00. Doc. 574-2 at 41. Ryobi argues that because Graham did not testify at trial, those costs are not recoverable. Doc. 583 at 7. As with preparing a deposition transcript or video, though, a witness's costs can be taxed even if the witness ultimately does not testify: "Fees paid to a witness who was subpoenaed but did

11

not actually attend the trial may be allowed as costs 'when it was reasonably expected that his attendance would be necessary and he had held himself in readiness to attend.'" *Spanish Action Comm. of Chicago v. City of Chicago*, 811 F.2d 1129, 1138 (7th Cir. 1987) (quoting 6 *Moore's Federal Practice* ¶ 54.775-1, at 54-437); *see Haroco, Inc. v. Am. Nat'l Bank & Trust Co. of Chicago*, 38 F.3d 1429, 1442 (7th Cir. 1994) ("The subpoenaed witnesses were compensated for their readiness to testify at the depositions. The award of costs for these witnesses was proper."). Ryobi has not argued, let alone shown, that Stollings's decision to make Graham available to testify was unreasonable. As a result, Graham's costs—including a day of attendance and subsistence fees ($110.00)—are taxable. In total, Stollings may recover $2,530.40 for expert witness costs.

### E. Delivery Costs

The next dispute concerns charges for the delivery of exhibits and other evidence (including several table saws) to Chicago for both trials. Doc. 574-1 at 2. Ryobi questions whether these costs are recoverable at all and, in the alternative, challenges their reasonableness. Doc. 583 at 8. In *Wahl v. Carrier Manufacturing Co.*, 511 F.2d 209 (7th Cir. 1975), the Seventh Circuit held that "the expense of transporting exhibits is not a proper element of costs," *id.* at 217-18, and this court has been unable to find any decision in which delivery charges of this sort were held recoverable under § 1920. The only decision Stollings cites, *Angevine v. WaterSaver Faucet Co.*, 2003 WL 23019165 (N.D. Ill. Dec. 23, 2003), states that a court "may, in its discretion, award incidental costs, including delivery charges." *Id*. at *9. But the charges in *Angevine*, and in the decisions it discusses, involve delivery costs associated with depositions, which are recoverable under § 1920(2). *See ibid*.; *see also Finchum v. Ford Motor Co.*, 57 F.3d 526, 534 (7th Cir. 1995) ("The Finchums[] further challenge the award of costs 'incidental' to

12

the taking of the depositions, … such as … delivery charges by the court reporter ….")."
*Angevine* does not suggest that § 1920 permits the prevailing party to recover the costs of shipping their trial materials to the courthouse. To the contrary, it notes that "shipping costs have generally been deemed non-recoverable ordinary business expenses." 2003 WL 23019165, at *10 (internal quotation marks omitted).

Stollings also notes that *Little v. Mitsubishi Motors North America*, *supra*, holds that "costs for … delivery services … are authorized by § 1920." 514 F.3d at 701. There is nothing to indicate that the "delivery services" referenced in *Little* involved transportation of trial exhibits; the court certainly did not say so. The district court's opinion likewise does not say which delivery costs were awarded, although context suggests that the delivery was of litigation papers to the opposing party. *See Little v. Mitsubishi Motors Mfg. of Am., Inc.*, 2007 WL 1232097, at *4 (C.D. Ill. Apr. 26, 2007) ("Likewise, postage, telephone, and delivery charges … are properly recoverable by a prevailing party.") (internal quotation marks omitted, ellipses in original). Nor did *Little* acknowledge, much less distinguish or overrule, the Seventh Circuit's holding in *Wahl* that the costs of transporting exhibits are not recoverable. Therefore, Stollings's trial-related shipping expenses are not recoverable under § 1920. *See Osorio v. One World Techs., Inc.*, 834 F. Supp. 2d 20, 23 (D. Mass. 2011) (denying the plaintiff costs for delivering exhibits in a similar table saw case against Ryobi).

### F. Daily Transcripts and Real-Time Feeds

Stollings requests $28,180.92 for printed or electronically recorded transcripts. Doc. 574 at 1. Ryobi contends that Stollings should not recover costs for daily transcripts at the first trial, which totaled about $25,000. Doc. 583 at 11-13. Costs associated with daily trial transcripts may be recovered where the trial is "lengthy and complex," *Majeske*, 218 F.3d at 825 n.3, but not

13

where it is short and simple, *see Bogan v. City of Chicago*, 2010 WL 2635789, at *2–3 (N.D. Ill. June 28, 2010); *Shanklin Corp. v. Am. Packaging Mach., Inc.*, 2006 WL 2054382, at *2 (N.D. Ill. July 18, 2006). Although this case involved only two claims, it was fairly complicated. The first trial took two weeks and involved a fair amount of expert testimony.

Ryobi now argues that because Stollings's counsel did not order daily transcripts in the second trial, the cost of daily transcripts could not have been reasonably necessary in the first trial. That is not what Ryobi said when the shoe was on the other foot. Ryobi's own bill of costs after the first trial sought to recover daily transcript costs, arguing that the costs were necessary "for purposes of cross-examination, preparation of briefing related to trial objections and jury instructions, and preparation of Rule 50 motions." Doc. 366 at 3. What is more, Ryobi and Stollings agreed before the first trial to split the cost of daily transcripts. Other courts—not to mention Ryobi itself—have concluded that pretrial cost-sharing agreements are strong evidence that daily transcripts were reasonably necessary to the case. *See Neuros Co., Ltd. v. KTurbo, Inc.*, 2011 WL 3841683, at *3 (N.D. Ill. Aug. 25, 2011); *Glenayre Electrics*, 2003 WL 21947112, at *1; *Lemelson v. Mattel, Inc.*, 1993 WL 34823, at *1 (N.D. Ill. Feb. 11, 1993); Doc. 366 at 3 (where Ryobi analogized itself and Stollings to the parties in *Glenayre*, who were "willing[] to share the costs" of daily transcripts). In light of all these considerations, the court concludes that Stollings is entitled to recover his daily transcripts costs from the first trial. (Stollings concedes that he cannot recover $196.31 of his requested transcript costs from the first trial, Doc. 586 at 16 n.4, so those costs are disallowed.)

Stollings also seeks $3,525.00 for internet service and remote real-time feeds from Courtroom Connect during the first trial. In support, Stollings contends that "[i]n long and complex trials like the first trial in this case, … costs for real-time transcripts are recoverable."

14

*Id*. at 20. But the authorities he cites all address daily transcripts, not real-time feeds. *Id.* at 20-21. Stollings has not shown why he needed real-time internet services and feeds in addition to daily copies of the transcript. Absent such an explanation, the court finds that the Courtroom Connect costs were largely a matter of attorney convenience and therefore disallows them.

### G.     Appeal Costs

Finally, Ryobi argues that Stollings cannot recover any costs incurred during his successful appeal: the fee for the notice of appeal; the fee for Stolling's lawyer's admission to the Seventh Circuit; costs for various copies; and printing costs for the briefs. Doc. 574-3. Federal Rule of Appellate Procedure 39(d) provides that appellate costs generally should be sought from the court of appeals directly. However, Rule 39(e) permits a "party entitled to costs under this rule" to recover the following appellate-related costs in the district court: "(1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a supersedeas bond …; and (4) the fee for filing the notice of appeal." Fed. R. App. P. 39(e); *see Winniczek v. Nagelberg*, 400 F.3d 503, 504 (7th Cir. 2005) ("Rule 39(e) lists four types of cost on appeal that must be obtained from the district court rather than from the court of appeals.").

Under the plain terms of Rule 39(e), Stollings is entitled to $455.00 for the costs of filing his notice of appeal. Doc. 350. The remaining appellate costs are disallowed because Rule 39(e) does not cover the costs of attorney admissions, copying, or printing briefs. The time for Stollings to request those costs from the Seventh Circuit expired over a year ago. *See* Fed. R. App. P. 39(d)(1) ("A party who wants costs taxed must—within 14 days after entry of judgment—file with the circuit clerk … an itemized and verified bill of costs."). (That deadline does not apply to cost requests under Rule 39(e). *See McDonald v. McCarthy*, 966 F.2d 112, 115

15

(3d Cir. 1992) ("There is no indication in the rule that [Rule 39(e)] costs are subject to Rule 39(d)'s fourteen-day time limit and we decline to read such a time limit into the rule."); *Carlson v. Bukovic*, 2011 WL 1003068, at *2 (N.D. Ill. Mar. 18, 2011) (finding no authority for applying either Rule 39(d) or Local Rule 54.1's time limits to Rule 39(e) requests); *Choice Hotels Int'l, Inc. v. Kaushik*, 203 F. Supp. 2d 1281, 1284-85 (M.D. Ala. 2002) (same).)

Ryobi contends that Rule 39(e) is inapplicable because "[t]he Seventh Circuit did not award costs." Doc. 583 at 14. That contention rests on a false factual premise, as the Seventh Circuit's judgment states: "Costs awarded to appellant Stollings." Doc. 407 at 1. Accordingly, pursuant to Rule 39(e)(4), the court will award Stollings $455.00 for his notice of appeal.

## Conclusion

To summarize, Stollings is a prevailing party with respect to both trials and is entitled to $47,724.42 in costs, calculated as follows:

Trial Costs

Fees of the clerk: $646.00
Fees for printed or electronically recorded transcripts: $27,984.61
Fees and disbursements for printing: $4,328.40
Fees for exemplification and the costs of making copies: $11,780.01
Fees and disbursements for witnesses: $2,530.40

SUBTOTAL: $47,269.42

Appellate Costs

Fees for notice of appeal: $455.00

TOTAL: $47,724.42

July 6, 2015

United States District Judge

16